New York Oyer and Terminer.   January, 1860.   Before *Ingraham*, Justice of the Supreme Court.

## The People *v.* Patrick Tannan.

The statute declaring a homicide to be excusable "when committed upon a sudden combat, without any undue advantage being taken, and without any dangerous weapon being used, and not done in a cruel or unusual manner," is not applicable to a case where the deceased was killed by the prisoner in a fight with fists, and in which the fight was arranged by the prisoner or his friends with his adversary some hours before the fight took place.

Where, in an indictment for murder, it was charged that the death was caused by beating and striking, and the evidence showed that it was probably caused by injuries to the side of the deceased, occasioned by his falling upon a mound of earth when engaged in a personal combat with the prisoner, the prisoner was acquitted by the jury under the advice of the court.

The defendant was brought to trial on an indictment charging him with the homicide of one Honeyman, in December, 1859, in the city of New York. The defendant possessed a good character for peace, quietness and integrity, while the deceased was proven to have been a man of abandoned character and addicted to ruffianly habits.

The defendant and deceased met at a porter house, when the former charged the latter with having passed counterfeit money. Angry words ensued, and the deceased drew a knife on the defendant, upon which the bystanders interfered, and the parties were separated. On the following day, deceased and his friends sought out defendant, and proposed that he should fight with deceased. Defendant manifested a disposition to avoid the encounter, but upon being pressed, consented to "fight it out." Accordingly, in the morning, it was arranged that the parties should fight at two o'clock in the afternoon, at which time they met in an open lot in First avenue, stripped to the waist, and formed a ring. The parties fought four rounds with their fists. The amount of hitting done by each party was about equal. At the end of each round the defendant fell upon Honeyman with crushing weight, and, in one or two instances, remained there some little time. The prosecution

admitted that no undue advantage in the combat was taken by the defendant, with the exception of falling on Honeyman. At the end of one or two rounds, Honeyman fell upon his side, hitting a mound of earth.

Honeyman died nine days afterwards. Several physicians testified, that in their opinion death was the result of the injuries received in the fight. Severe injuries were received upon the side, which were sufficient to cause death. The physicians testified that these injuries might have been caused by the deceased falling violently upon a mound of earth.

*Henry L. Clinton,* for the prisoner, contended that upon the testimony in the case the homicide was excusable, under 2 *R. S.,* 661, § 4, *sub.* 2, which provides that homicide is excusable when committed " upon a sudden combat, without any undue advantage being taken, and without any dangerous weapon being used, and not done in a cruel or unusual manner." The combat was forced upon the prisoner. Had he not assented to it, taking into view the character of the deceased as a desperado, he was justified in believing that, if he did not fight the deceased, the latter would perpetrate a murderous attack upon him when he was unprepared.

*Mr. Clinton* also contended that inasmuch as the indictment charged that the death was caused by beating and striking, and the evidence showed it was probably the result of the falling of the deceased upon a mound of earth, and thereby causing fatal injuries to his side, the jury could not, in any point of view, convict under this indictment. To sustain this point, the counsel cited *Rex* v. *Kelly,* 1 *Moody's Cr. C.,* 113 ; *Rex* v. *Wrigly,* 1 *Lewin. C. C.,* 193 ; *and Ib.,* 127.

*Nelson J. Waterbury* (District Attorney), contended that the testimony showed a clear case of manslaughter in the fourth degree.

INGRAHAM, J., charged the jury, that although it appeared from the evidence the prisoner was a man of good character,

and the deceased was a man of notoriously bad character, yet the bad as well as the good were entitled to the protection of the law. It was for the jury to say, upon the whole evidence, whether the combat was sudden. If the prisoner arrangèd with his adversary, hours before the fight, that it should take place, or authorized his friends to make such arrangements for him, then clearly it was not a "sudden combat," and the section of the statute cited by prisoner's counsel, did not apply. It was for the jury to say whether the evidence showed that the prisoner made the previous arrangements for the fight, or whether they were made by his friends on his behalf, without his knowledge.

The court also charged, that if it appeared from the evidence that the deceased came to his death from injuries occasioned by falling on a mound of earth, under the indictment, the jury should acquit.

The prisoner was acquitted.